## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:16-cv-01312-CMA-KMT

DAWN WARD,

       Plaintiff,

v.

WENDY KOCH, in her individual and official capacity, RICHARD
SPRAGUE, in his individual and official capacity, TIM DAVIS in his
individual and official capacity, BRIAN GILBERT, in his individual and
official capacity, BERNARD HUBNER, in his individual capacity, BRIAN
MOREHOUSE, in his individual capacity, ROBERT MORRIS in his
individual capacity, PATRICK ADAMS in his individual capacity,

       Defendants.

---

## AMENDED COMPLAINT

---

Plaintiff Dawn Ward, an individual (**"Plaintiff"**), by and through her undersigned counsel Vedra Wali LLC, files this Complaint alleging violations of her First Amendment rights under the U.S. Constitution by Defendants Wendy Koch, Richard Sprague, Tim Davis, Brian Gilbert, Bernard Hubner, Brian Morehouse, Robert Morris, and Patrick Adams (collectively the **"Defendants"**) and states as follows.

## INTRODUCTION

1. This action arises out of the Town of Empire's (the **"Town"**) unlawful termination of Plaintiff. From 2013 to 2015, Plaintiff was the treasurer for the Town. Plaintiff was employed to maintain the accounting records for the Town.

2. On May 19, 2015, Plaintiff publicly confronted a local marijuana dealer at the Town's monthly Board of Trustees (the **"Board"**) meeting. Plaintiff raised concerns about the Town's proposed marijuana ordinance. In particular, the Town's proposed marijuana

ordinance would give the marijuana dealer a monopoly on the Town's marijuana trade. Plaintiff also confronted the marijuana dealer about an undisclosed agreement between the Town and the marijuana dealer that allowed him to avoid paying thousands of dollars in tap-fees for over two years. The Town terminated Plaintiff after she engaged in politically protected speech in violation of her First Amendment rights under the U.S. Constitution.

## PARTIES, VENUE, AND JURISDICTION

3. Plaintiff is an individual citizen of the United States, and at all relevant times has resided in Clear Creek County, Colorado.

4. The Town is a statutory town located in Clear Creek County, Colorado.

5. The Board is the Board of Trustees for the Town.

6. In 2015, Robert Morris was a member of the Board.

7. At all relevant times, Robert Morris was acting under the color of state law.

8. On or about May 11, 2016, Robert Morris died.

9. On or after May 11, 2016, a probate proceeding was commenced for Robert Morris's estate.

10. The probate proceeding was initiated in Clear Creek County case number 2016PR30014.

11. In 2015, Richard Sprague was a member of the Board.

12. Richard Sprague is currently the Mayor of the Town.

13. At all relevant times, Richard Sprague was acting under the color of state law.

14. Wendy Koch was the Mayor of the Town in 2015.

15. Wendy Koch is currently a member of the Board.

16. In 2015, Wendy Koch was serving as the Mayor of the Town.

17. At all relevant times, Wendy Koch was acting under the color of state law.

18. Tim Davis is a member of the Board and at all relevant times was acting under the color of state law.

19. Brian Gilbert is a member of the Board and at all relevant times was acting under the color of state law.

20. In 2015, Bernard Hubner was a member of the Board.

21. At all relevant times, Bernard Hubner was acting under the color of state law.

22. In 2015, Brian Morehouse was a member of the Board.

23. At all relevant times, Brian Morehouse was acting under the color of state law.

24. In 2015, Brian Morehouse was a member of the Board.

25. At all relevant times, Brian Morehouse was acting under the color of state law.

26. At all relevant times, the Board was acting under the color of state law.

27. The Board is responsible for the administration and governance of the Town.

28. The Mayor of the Town votes with the Board on policy decisions for the Town.

29. The Mayor and Board are the final policy makers for the Town.

30. The Mayor and Board are authorized by the State of Colorado to make personnel decisions including hiring and termination.

31. Both the Board and the Mayor conduct their official duties at 30 East Park, Empire, Colorado 80438.

32. At all relevant times, Plaintiff was an employee of the Town.

33. The acts and omissions described herein occurred in the Town.

34. The Town is a "person" as that term is defined in 42 U.S.C. § 1983.

35. Each of the Defendants is a "person" as that term is defined in 42 U.S.C. § 1983.

36. This action is authorized and instituted pursuant to 42 U.S.C. § 1983.

37. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this case arises under federal law.

38. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) as Plaintiff brings this case to redress the deprivation of her Constitutional rights.

39. Venue is appropriate in this District pursuant 28 U.S.C. § 1391(b)(1) as the Defendants are residents of the State of Colorado, the state in which this District is located.

3

## FACTUAL ALLEGATIONS

40.    Starting in May 24, 2013, Plaintiff began working for the Town as its treasurer.

41.    Each year, every Colorado statutory town is required to audit its financial records pursuant to C.R.S. § 29-1-603 and report the results to the State of Colorado.

42.    These audits assure citizens, legislators, and others that government funds are accounted for properly and that government organizations substantially comply with the law and regulations.

43.    In 2015, Plaintiff was assisting the state auditor, Jack Salewski, with the Town's 2014 annual audit to be submitted to the State of Colorado.

44.    While preparing the annual audit, Plaintiff discovered a tap-fee finance agreement (the "**Agreement**") that the Town created in 2012.

45.    The Town had not previously disclosed the Agreement in its previous two state audits.

46.    In the Agreement, the Town allowed a local marijuana dispensary owner, Dan Volpe, to finance his marijuana dispensary's tap-fee over a period of two years.

47.    According to Generally Accepted Auditing Standards and Colorado law, the Town should have disclosed the Agreement to the State of Colorado in its 2012 audit.

48.    Despite monthly payments being due, Dan Volpe had not made a single monthly payment towards the balance due in the Agreement.

49.    Plaintiff asked the independent state auditor, Jack Salewski, what she should do about the Agreement.

50.    Jack Salewski instructed Plaintiff to disclose the Agreement in the 2014 state audit.

51.    When Plaintiff informed then Mayor Wendy Koch that she had included the Agreement in the 2014 audit, Mayor Wendy Koch told Plaintiff that she should not have done that.

52.    On May 19, 2015, Plaintiff attended a regular meeting of the Board.

53.    Wendy Koch, who at that time was the Mayor of the Town, was not present.

54.    Brian Gilbert filled in as Mayor *Pro Tempore* in Wendy Koch's absence.

55.    At the meeting, the Mayor *Pro Tempore* and Board addressed whether to make changes to the marijuana ordinance.

56.    The existing marijuana ordinance contained minimum distance requirements for marijuana dispensaries.  In other words, there was not a limit on how many dispensaries could be located in the Town, but there were restrictions on how close dispensaries could be located to each other.

57.    The proposed changes to the marijuana ordinance would instead limit the number of dispensaries based on a number of issued licenses.

58.    Dan Volpe, the Town's only dispensary owner, was present at this meeting.

59.    Board member, Robert Morris, was also present at this meeting.

60.    Robert Morris owned the building in which Dan Volpe operated the marijuana dispensary that was the subject of the Agreement.

61.    Dan Volpe expressed his support to the proposed changes to the marijuana ordinance.

62.    The proposed changes would effectively give Dan Volpe a monopoly over the marijuana trade in the Town.

63.    Plaintiff believed the Board, Mayor, and Town citizens should be aware of Dan Volpe's failure to pay the Town money owed under the Agreement.

64.    Plaintiff asked Dan Volpe if he intended to pay any of the money he owed to the Town under the Agreement.

65.    By speaking up during the meeting, Plaintiff engaged in protected political speech concerning a matter of public concern.

66.    After the May 19, 2015, meeting Town officials began a campaign of retaliation against Plaintiff.

67. On June 2, 2015, Brian Gilbert, Wendy Koch, and the Town's attorneys held a disciplinary meeting with Plaintiff to reprimand her for speaking out during the May 19, 2015, meeting.

68. On June 9, 2015, Wendy Koch and the Town's attorneys made Plaintiff sign a disciplinary memorandum regarding her speech at the May 19, 2015, meeting.

69. The disciplinary memorandum referenced an employee handbook that Plaintiff never received.

70. Shortly thereafter, Robert Morris verbally accosted Plaintiff while she sat a local cafeteria connected to the Town Hall.

71. On or about June 16, 2015, Robert Morris resigned his position from the Board.

72. The Board replaced Robert Morris's vacant Board position with Richard Sprague.

73. On or about July 20, 2015, Richard Sprague visited the Town Hall.

74. Plaintiff and two other Town employees were present at the Town Hall.

75. Richard Sprague introduced himself to the other two Town employees but ignored Plaintiff.

76. Richard Sprague then commented that he was going to "clean up" the Town.

77. Plaintiff interpreted Richard Sprague's comment as being directed towards her.

78. Later, Dan Volpe's employee accosted Plaintiff and accused her of being anti-marijuana.

79. Plaintiff did most of her work from home, as the Town Hall did not have adequate space to provide her with an office.

80. For this reason, Plaintiff brought files necessary to do her job home with her from the Town Hall.

81. Plaintiff's work required her to use a lap top provided by the Town.

82. Plaintiff was an hourly employee of the Town.

83.    In early September 2015, the Town clerk, acting at Richard Sprague's direction called Plaintiff and told her to bring her work files back to the Town Hall.

84.    These files contained invoices that Plaintiff collected, paid, and would then file away.

85.    Richard Sprague's new policy made it nearly impossible for Plaintiff to do her job as a treasurer.

86.    Plaintiff needed these files which contained invoices to send payments to vendors.

87.    Nonetheless, Plaintiff complied and brought the files back to the Town Hall.

88.    On September 9, 2015, Richard Sprague told Plaintiff to bring her lap top to the town hall and give it to the clerk.

89.    Richard Sprague explained that the clerk was going to take the lap top to a grant writing class.

90.    Richard Sprague further stated that the grant writing class had priority over the Town's annual audit.

91.    Plaintiff needed the lap top to complete the annual audit.

92.    Without the lap top Plaintiff could not do any work and therefore Plaintiff would not be paid.

93.    Plaintiff called Mayor Wendy Koch for guidance.

94.    Wendy Koch intervened and informed Richard Sprague that Plaintiff's completion of the state audit was priority.

95.    On September 15, 2015, the Board, upon a motion from Mayor Wendy Koch, voted to terminate Plaintiff.

96.    Mayor Wendy Koch and the Board voted unanimously to terminate Plaintiff.

97.    By voting to terminate Plaintiff, the Mayor and the Board violated Plaintiff's First Amendment rights through an official act or policy of the Town of Empire.

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983 - First Amendment Violation - Retaliation)

98.    Plaintiff incorporates all of the foregoing paragraphs as though fully stated herein.

99.    42 U.S.C. § 1983 states, "[e]very person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."

100.    The First Amendment of the United State Constitution prohibits government from abridging an individual's freedom of speech.

101.    Plaintiff, by speaking out against the Town of Empire's preferential treatment toward Dan Volpe, was engaging in constitutionally protected political speech.

102.    The Defendants' conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in their position would know or should have known.

103.    Plaintiff's speech was not disruptive and was related to objectionable government conduct, a matter of public concern.

104.    The Defendants' unlawful termination of Plaintiff was substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct.

105.    The Defendants' adverse actions in retaliation for Plaintiff's opposition to objectionable government conduct concerning favoritism and use of public funds to help a local marijuana dealer caused Plaintiff to suffer injuries.

106.    The Defendants' would not have terminated Plaintiff's employment in the absence of her protected speech.

107.    Plaintiff's speech was calculated to expose the wrong-doing of government officials.

108. Plaintiff's right to speak out on issues of public concern outweighed any of the Defendants' rights.

109. Plaintiff's constitutionally protected speech was not made pursuant to her official duties as the town treasurer, but rather as a private citizen.

110. The Defendants engaged in the conduct described in this Complaint willfully, wantonly, and maliciously and in reckless disregard of Plaintiff's federally protected constitutional rights.

111. Plaintiff's constitutional violations were caused directly by the Defendants who are, or were, final policy making officials for the Town.

112. Plaintiff's unlawful termination was caused, authorized, and approved by the Defendants.

113. The Defendants' termination of the Plaintiff constitutes an official act, decision, and policy of the Town.

114. The Defendants' actions caused Plaintiff to suffer injuries that would chill a person of ordinary firmness from continuing to engage in such constitutionally protected activity.

115. The Defendants' conduct proximately caused significant injuries, damages, and losses to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendants, and award her all relief as allowed by law, including, but not limited to the following:

    a.    Actual economic damages as established at trial;

    b.    Compensatory damages including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

    c.    Punitive damages as allowed by law;

    d.    Equitable relief in the form of front pay in lieu of reinstatement;

e.     Pre-judgment and post-judgment interest;

f.     Attorney's fees and costs; and

g.     Such further relief as justice requires.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE

**DATED** this 21 day of June, 2016.

VEDRA WALI LLC

By: _____
Ahson Wali
Daniel J. Vedra
Vedra Wali LLC
1435 Larimer St., Suite 302
Denver, CO 80202
Phone: (303)937-6540
Ahson.wali@vwfirm.com
Daniel.vedra@vwfirm.com
***Attorneys for Plaintiff***

10